IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**BRENDA L. DETRES**,
    Petitioner,

v.

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

Civil No. 19-1823 (BJM)

## OPINION AND ORDER

Brenda Liz Detres ("Detres") seeks review of the Social Security Administration Commissioner's ("Commissioner's") finding that she is not entitled to disability benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Detres contends, inter alia, that the administrative law judge ("ALJ") failed to properly account for her obesity when considering whether she had a severe impairment and when evaluating her residual functional capacity ("RFC"); she also contends that the ALJ relied on evidence that Detres objected to in reaching her determination. Docket No. ("Dkt.") 15. The Commissioner opposed. Dkt. 16. This case is before me by consent of the parties. Dkt. 6, 7. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters

entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R.

§ 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in Appendix 1 of the regulations, impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, at which point the ALJ assesses the claimant's RFC and determines whether the claimant's impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final Step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following facts are drawn from the transcript ("Tr.") of the record of proceedings.

Detres was born on September 29, 1976. Tr. 37. She completed her high school education as well as a two-and-a-half-year university certification in invoicing and medical records. Tr. 39. Detres communicates in Spanish and does not understand English. *Id*. Detres's most recent job was as a medical secretary at Hospital Metropolitano in San German, Puerto Rico. Tr. 40, 87. Detres worked as a medical secretary for almost eight years; before becoming a medical secretary, she was a cashier at a retail store for around four months, and she had previously worked as a sewing machine operator as well. Tr. 40-41.

On January 8, 2016, Detres applied for disability benefits, claiming a disability onset date of May 28, 2014, when she was 39 years old. Tr. 37, 736; *see also* Dkt. 15 at 1. Detres's date last insured was December 31, 2015. *Id*. The Commissioner denied Detres's claim initially, on reconsideration, and after a hearing before an ALJ. Tr. 12, 18. The record before the Commissioner, which includes medical evidence, earnings information, workers' compensation information, and Detres's self-reports, is summarized below.

Detres has developed a variety of health problems since 2009. In 2009, while working as a medical secretary, Detres fell off a ladder on the job, which has led to her experiencing chronic pain, cervical spasms, and fibromyalgia. Tr. 41, 503. Since 2009, Detres has also been diagnosed with carpal tunnel, rheumatoid arthritis ("RA"), lumbar spinal stenosis with neurogenic claudica, a calcaneal spur in her right foot, obesity, a herniated disc, gastroesophageal reflux disease, and major depressive disorder. Tr. 42-43, 46, 265, 445, 596. In December 2010, Detres stopped working due to complications from the trauma that she suffered after falling off the ladder. Tr. 41.

Before the onset date cited by Detres, she had already been in physical therapy for some time and was seeing doctors in connection with several of her ailments. Due to her fall in 2009, Detres suffers from chronic pain, cervical spasms, and fibromyalgia, for which she has taken medication. Tr. 491, 503. Detres began making monthly visits to Dr. Arlene Roman Ramirez ("Dr. Roman") on October 20, 2004, for RA, and she continued to make visits to Dr. Roman until at least March 31, 2016. Tr. 486. She was diagnosed with RA long before the onset date she claims and has treated the condition with medication over the subsequent years. Tr. 46, 486, 491, 497, 500. She has complained of pain, numbness, and mood changes being side effects of her RA medications. Tr. 486, 497-98, 500.

In February 2010, Detres was diagnosed with tendonitis after complaining about hand pain and receiving therapy on her hands; physical therapist Dr. Pedro Crespo Ortiz ("Dr. Crespo") confirmed the tendonitis diagnosis in November of the same year. Tr. 269-270, 437. On January 11, 2011, she was diagnosed with bilateral carpal tunnel, and Dr. Crespo recommended that Detres undergo hand surgery in order to alleviate her carpal tunnel symptoms. Tr. 265-66, 1040. Detres was originally scheduled to have carpal tunnel surgery in February 2012; the surgery was to be performed on her left hand by hand surgeon specialist Dr. Oscar Vargas Gonzalez ("Dr. Vargas"). Tr. 240, 265. However, Detres did not receive the surgery until August 29, 2013. Tr. 42. Post-surgery, Detres complained of continued muscle weakness and pain in her left hand as recently as June 23, 2016. Tr. 593.

After complaining of similar symptoms in her right wrist and while continuing therapy for both of her wrists under the guidance of Dr. Crespo, Detres was referred for carpal tunnel surgery on her right wrist in March 2014; Dr. Vargas performed the surgery on June 12, 2015. Tr. 182, 200. Detres's doctors told her not to work after the surgery in order to help rehabilitate her hand. Tr.

420. At a checkup a month after the surgery on her right wrist took place, Detres continued to complain of pain, weakness, and loss of function in her right hand, as well as cramps and numbness in the area where the surgery had been performed. Tr. 172. Within a few months, however, Dr. Vargas noted that Detres's right wrist pain seemed to have decreased and that her grip strength was noticeably improved. Tr. 160-171. On January 12, 2016, Detres received a steroid injection meant to aid her hand's recovery, and Dr. Vargas noted that she had "reached maximum surgical benefit." Tr. 386.

Detres suffers from issues with her spine as well. A radiologist, Dr. Virgen Acosta de Oben, saw Detres on February 19, 2014. Tr. 924. Her impression was that Detres's hips were normal, Tr. 925; on the other hand, she found that Detres had a slight posterior discal narrowing in part of her spine and that she had a small gap in the same area that could be spondylolysis. Tr. 924. On March 13, 2015, Dr. Luis Marrero diagnosed Detres with spinal stenosis of the lumbar region without neurogenic claudication; he also noted that she had lumbar spondylosis and that she was obese. Tr. 859, 861. Detres complained to Dr. Marrero of constant "achy" lower back and leg pain, numbness, tingling, and weakness in her legs, limited painful motion, pain in her legs at night, and physical activity limitations. Tr. 862-63. However, Detres's Babinski and straight leg raise tests were negative and a FABER test that Dr. Marrero performed on her was non-tender. Tr. 865. On March 8, 2016, radiologist Dr. German Chaves reported that a lumbosacral spine x-ray found some bilateral spondylosis with Grade 3 spondylolisthesis and some narrowing of disc space. Tr. 1219.

On September 25, 2014, radiologist Dr. Rafael Grovas Porrata ("Dr. Grovas") conducted an MRI on Detres's lumbar spine; his impression was small far lateral disc herniation to the left without significant spinal canal stenosis but with some narrowing of the neural foramina on the left; a slight disc bulge but without spinal canal stenosis or neural foramina narrowing; some Grade

1 anterolisthesis with bilateral spondylosis; some anterior wedging; straightening of the lumbar lordosis likely related to muscle spasms; and a small left far lateral disc herniation. Tr. 918-19. On February 5, 2016, Dr. Grovas found that Detres had some mild spurring of the facets and a slight lumbar curve convex to the left. Tr. 1240. He also stated that Detres had an enlarged uterus with three myomas and recommended that she undergo a pelvic ultrasound. Tr. 1239. On April 20, 2016, Dr. Grovas conducted another MRI on Detres. Tr. 1238. He noted preservation of the normal lumbar lordosis, some mild anterior wedging without significant compression fracture, some slight Grade 1 anterolisthesis with bilateral spondylolysis, some disc desiccation accompanied by more early spondylolysis, and a subcentimeter vertebral hemangioma. *Id*. He indicated that there was no detectable disc herniation, but he did reference one slight disc bulge and a broad-based disc bulge indenting the thecal sac; he also noted bilateral narrowing of the neural foraminas. *Id*. He noted no bony edema, compression fracture, or paraspinal soft tissue abnormality. Tr. 1238-39. On August 9, 2017, Dr. Grovas again conducted an MRI of Detres's spine and compared it to the MRI from April 20, 2016; he again found that there was preservation of the normal lumbar lordosis and noted some mild anterior wedging in the same area as before without significant compression fracture or edema and Grade 1 anterolisthesis. Tr. 1332. Dr. Grovas also noted early spondylosis of Detres's vertebral bodies but did not notice the subcentimeter vertebral hemangioma that he had seen before. *Id*. He noted that there was no detectable disc herniation but did note a single broad-based disc bulge that caused minimal indentation of the thecal sac. *Id*. He also saw some synovitis of Detres's facet joints and some narrowing of the neuro foramina on Detres's right side. *Id*. He noted that there was no visible bony edema, compression fracture, or paraspinal soft tissue abnormality. *Id*.

   Detres has also been diagnosed with a variety of mental health issues. On February 10, 2011, Dr. Jorge Baez Collado ("Dr. Baez") stated in a progress note that Detres suffered from physical conditions causing her limitations in her duties like chronic pain, cervical spasms, and fibromyalgia, but also mental conditions like sadness, anhedonia, depression, anxiety, and anger, as well as related weight gain. Tr. 503. After positive findings on February 18 and March 10, 2011, Dr. Baez saw Detres on April 11, 2011, and noted that she was depressed with frequent crying and irritability. Tr. 500. He stated that her condition had worsened since being recently diagnosed with RA and osteoporosis; he also noted that she was experiencing weight gain and low self-esteem and did not feel well. Id. On July 27, 2011, Dr. Baez noted that Detres had self-reported feeling better in June and that her mood was better; however, he also noted that she sometimes experienced eating anxiety during the day. Tr. 498.

   On September 18, 2014, Detres visited an APS Mayaguez Clinic reporting depressed mood, anhedonia, insomnia, anxiety, and excessive worry, but denying suicidal thoughts. Tr. 331. The clinic proscribed her Cymbalta and Klonopin and noted that she suffered from mood disorder and major depressive disorder. Tr. 332. On January 19, 2016, she visited the Clinic and reported having anxiety attacks 2-3 times a day, with insomnia, tension, crying spells, and irritability. Tr. 326. She denied suicidal ideas, but noted that she had passive thoughts about suicide at times. Id. The clinic noted that her symptoms had shown no improvement since she last received treatment a year before. Id. She was again diagnosed with mood disorder and major depressive disorder. Tr. 329. Detres was hospitalized from March 2 to March 9, 2016 after presenting severe depressive symptoms, including thoughts of death accompanied by anxiety and poor impulse control. Tr. 439. Detres suffered from high levels of anxiety and mental ailments before her alleged onset date as well. See, e.g., Tr. 450-69.

On January 27, 2014, Dr. Roman saw Detres because she was suffering from severe lower back and right hip pain. Tr. 927. At the time, Dr. Roman noted that Detres weighed 220 pounds and was 62 inches tall; her BMI was 40.23. *Id*. Dr. Roman stated that she presented with musculoskeletal issues like joint pain, lower back pain, arthritis, redness, stiffness, swelling, and tenderness. *Id*. On February 7, 2014, Detres visited again manifesting similar symptoms and Dr. Roman made similar findings, additionally noting that Detres had severe knee pain. Tr. 926. On August 13, 2014, Dr. Roman saw Detres for severe lower back pain and noted that her BMI was now 41.14 and her weight was 225 pounds. Tr. 920. Dr. Roman noted that Detres had an unspecified disc disorder and a lesion of her sciatic nerve. *Id*. On April 8, 2015, Dr. Roman saw Detres again; she had been evaluated by a specialist who recommended that she have surgery, "but she has to decrease[] weight first." Tr. 913. At the time, Detres's weight was 221 pounds and her BMI was 40.41. *Id*. On August 26, 2015, Dr. Roman noted at a follow-up visit with Detres regarding her arthritis that Detres had Vitamin D deficiency. Tr. 909.

On June 10, 2016, Dr. Roman completed a medical questionnaire that asked about Detres's impairments. Tr. 486. Dr. Roman noted that Detres had RA and that her hands, shoulders, back, hips, and legs were all affected by her condition. *Id*. She also stated that Detres had depression and anxiety that affected her symptoms. Tr. 487. Dr. Roman said that Detres experienced pain, numbness, and mood changes as a result of her ailments, that her pain was prompted by walking and sitting, and that she suffered these symptoms constantly, including when sleeping. Tr. 486. She also noted that Detres took medications such as NSAIDs and muscle relaxants for her condition that caused her to experience drowsiness, dizziness, and nausea. Tr. 487. Dr. Roman claimed that Detres could only stand, sit, or walk for one hour out of an eight-hour workday with rests; she also claimed that Detres could never lift or carry any weight that was 10 pounds or more and could

Detres v. Commissioner of Social Security, Civil No. 19-1823 (BJM)                                                                 10

only rarely carry lighter weights. Tr. 488. Dr. Roman also stated that she could never bend, squat, crawl, climb, or reach above shoulder level; that she had no ability to perform activities that involved fingering, handling objects, or pushing and pulling; and that she could not use her feet for repetitive movements. *Id*.

Detres also saw Dr. Michael Babilonia Roman ("Dr. Babilonia") approximately every four months over a period of many years. Tr. 1425. In a medical questionnaire dated on or about June 7, 2018, Dr. Babilonia noted that he had been seeing Detres since March 2011 and that he had previously diagnosed her with inflammatory RA. Tr. 1425-26. He noted that her prognosis regarding the arthritis was guarded, but said that her pain was severe enough to constantly interfere with her concentration and attention, that she could only walk for around two blocks without rest or severe pain, and that she could sit for around two hours at a time before needing to get up, sit for about four hours of an eight-hour workday, stand for around twenty minutes before needing to sit down, and stand and walk for less than two hours of an eight-hour workday. Tr. 1426-27. He also noted that she experienced tiredness and fatigue; had a reduced range of motion; experienced tenderness, crepitus, swelling, muscle spasms, trigger points, and impaired sleep; and would need to take unscheduled 15-minute breaks from work around ever two hours during which she would have to sit quietly. Tr. 1425-27. Regarding Detres's ability to carry items, Dr. Babilonia said that she could never carry items that weighed 50 pounds or more and could only rarely carry items that weighed 20 pounds or more, but that she could occasionally carry items that weighed around 10 pounds or less. Tr. 1427. He also stated that she could never climb ladders or crouch and could only rarely stoop or bend, but that she could occasionally climb stairs and twist her body. *Id*. Dr. Babilonia also noted that Detres had significant limitations related to repetitive reaching, handling, and fingering: he stated that she could only use her upper extremities for grasping, turning,

twisting, fine manipulations, or reaching overhead for two hours of an eight-hour workday. Tr. 1428. He said that she was likely to absent from work for more than four days per month. *Id*.

Consultant Dr. Nilma Rosado Villanueva ("Dr. Rosado") evaluated Detres on March 8, 2016. Tr. 1220. Dr. Rosado noted that Detres had complained of lower back pain since 2009. *Id*. Dr. Rosado said that Detres said this pain was exacerbated by long distance walks, after repetitive rotation and flexion movements like house cleaning duties, or after standing for around two hours in one place. *Id*. Dr. Rosado noted that in early 2015, Detres had an orthospine surgeon evaluation, at which the surgeon recommended that Detres lose weight prior to being considered for a spine surgical procedure. *Id*. Dr. Rosado stated that Detres's regular weight had been 160 pounds until 2010, at which time she began gaining weight; Dr. Rosado also noted that Detres had no diet control and ate when she experienced anxiety. Tr. 1221. She said that Detres weighed 220 pounds at the time of her visit and had a BMI of 41.7. Tr. 1222. She also noted that Detres had joint pain, arthritis, depression and anxiety (for which she recommended a psychiatric follow-up), and some history of excessive menses, but no limitations opening the door, sitting, or standing. *Id*. She did not note any issues with Detres's extremities after a physical examination except for moderate swelling in her knees, some tenderness in her upper limbs, and some edema in her lower limbs; all other findings regarding her extremities were normal. Tr. 1223. Dr. Rosado also found her muscle tone and bulk to be normal and noted that she had no muscle atrophy; she found that she had "5/5" normal strength when it came to shoulder flexion, elbow flexion, and her hips, knees, and feet. Tr. 1224. Her deep tendon reflexes were also fully normal. *Id*. She found that Detres had achieved adequate hand function except for getting a "4/5" on a manual muscle strength test with her right hand. Tr. 1226, 1229. Dr. Rosado found that Detres was able to grip, grasp, pinch, finger tap, oppose her fingers, button a shirt, and pick up a coin with both hands. Tr. 1229. She also noted that

Detres's gait was normal and that she did not use any walking aids. Tr. 1227. Detres's range of motion was fully normal except that she could not fully extend her knees (75 out of 100 expected degrees bilaterally), flex her knees (140 out of an expected 150 degrees bilaterally), or flex her back forward (80 out of an expected 90 degrees). Tr. 1230.

On April 1, 2016, a state agency medical consultant, Dr. Ramon Ruiz Alonzo ("Dr. Ruiz"), determined that Detres was not disabled. Tr. 584. In support of this determination, Dr. Ruiz noted that although Detres was morbidly obese and had a spine disorder, her physical exam findings from a consultative examination conducted by Dr. Ruiz were only mild, and accordingly she retained the capacity to perform light work duties. Tr. 578. He also noted that she had major depressive disorder and mood disorder, but that he believed that she still had the RFC for light work, Tr. 577; another doctor consulted, Dr. Luis Rodriguez, apparently found that Detres had depressed mood, but no suicidal ideas, delusions, or hallucinations, adequate concentration, intact memory, and good judgment. Tr. 579. On June 29, 2016, another state agency medical consultant, Dr. Rafael Queipo, came to the same determination after Detres alleged worsening in her symptoms. Tr. 587, 603. Dr. Queipo saw to it that another consultative examination was conducted on Detres, but nonetheless found that the prior determination was substantively and technically correct and affirmed the prior determination as written; this was true for both Detres's physical and mental assessments. Tr. 595.

The ALJ conducted a hearing for Detres on June 25, 2018. Tr. 18. The ALJ then rendered her opinion on August 15, 2018. Tr. 26. The ALJ determined at Step One that Detres met the insured status requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date of May 28, 2014. Tr. 20. At Step Two, the ALJ found that Detres had the following severe impairments: obesity, lumbosacral disorder, bilateral carpal tunnel syndrome, and

RA. *Id*. At Step Three, the ALJ found that Detres did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 21. In particular, the ALJ considered Listings 1.02 and 1.04, but found that Detres's conditions did not meet or medically equal those listings. *Id*. The ALJ did not mention Detres's obesity when conducting her analysis at Step Three.

At Step Four, the ALJ found that Detres's medically determinable impairments could reasonably be expected to cause the symptoms that she alleged; however, she also found that Detres's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. Tr. 22. The ALJ ultimately concluded that Detres had the RFC to perform light work except for work that required frequent climbing of stairs and ramps; occasionally climbing ladders, ropes, and scaffolds; frequent stooping; frequent kneeling, crouching, or crawling; and frequent handling and fingering with both of her upper extremities. Tr. 22. As a result, the ALJ found that she would still be able to perform her past work as a medical secretary. Tr. 25-26. In making this finding, the ALJ referenced a prior ALJ opinion that had been introduced into evidence but that Detres had objected to at the ALJ hearing in the present matter. *See* Tr. 25; Tr. 37; Dkt. 15 at 19-20. The ALJ therefore found that Detres was not disabled without reaching Step Five. Tr. 25-26.

Detres requested that the Appeals Council review the ALJ's decision, and on July 2, 2019, the Appeals Council denied her request for review. Tr. 1-7. Detres then filed the present action on August 31, 2019. Dkt. 1. The case was subsequently assigned to me for all future proceedings, including entry of judgment. Dkt. 7.

## DISCUSSION

Detres raises the following claims: that (1) the ALJ failed to assess Detres's obesity at Step Three and failed to give her obesity proper consideration at Step Four; and that (2) when determining Detres's capacity to perform her past employment, the ALJ relied on exhibits that had been objected to without ruling on the objection. Dkt. 15 at 12, 18. The Commissioner maintains that substantial evidence supports the ALJ's decision. Dkt. 16 at 3. Detres also cursorily states that the ALJ left out or failed to recognize other severe conditions like hip pain, gastroesophageal reflux disease (GERD), upper respiratory tract infections (URI), right knee pain, and affective disorder. However, the ALJ specifically held that each of these conditions was a non-severe impairment, Tr. 20, and Detres offers no argument or evidence to support her claim. Accordingly, the claim is waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). I will address each of Detres's other claims in turn.

### A. ALJ Obesity Analysis

Obesity is not in and of itself a disability under the Social Security Act, as there is no listing under the Act for obesity. *See* Titles II & XVI: Evaluation of Obesity, SSR 00-3P, 2000 WL 2033380 (S.S.A. May 15, 2000). However, obesity and another impairment or impairments in combination can meet the requirements of a listing. *Id*. Additionally, obesity on its own could be medically equivalent to a listed impairment under certain circumstances. *Id*. However, "an ALJ's failure to explicitly address a claimant's obesity does not [in and of itself] warrant remand." *See Guadalupe v. Barnhart*, No. 04 CV 7644 HB, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3rd Cir. 2005) and *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

Detres v. Commissioner of Social Security, Civil No. 19-1823 (BJM)                                   15

The ALJ's failure to explicitly evaluate obesity at Step Three and her (arguably) cursory evaluation of obesity when determining Detres's RFC were at most harmless error. Detres fails to point to a single instance in which her physicians noted that her weight exacerbated any of her other symptoms, nor does she note a single occasion where her physicians said anything regarding Detres's obesity that would suggest that her obesity independently reached the level of a listed impairment. Moreover, the record does not support the notion that Detres's obesity would have been likely to significantly exacerbate her other symptoms or reach the level of a listed impairment. Detres does appear to stress-eat due to depression and anxiety, *see, e.g.*, Tr. 498, but any resulting weight gain is a symptom, not a cause, of her mental health issues.

"In the context of judicial review of the ALJ's decision, [plaintiff] ha[s] the burden of showing specifically how the obesity, in combination with other impairments, limit[s] her ability to a degree inconsistent with the ALJ's RFC determination." *Durant-Irizarry v. Comm'r of Soc. Sec.*, Civil No. 14-1444 (MEL), 2015 WL 8514587, at *4 (D.P.R. Dec. 11, 2015) (quoting *Smith v. Astrue*, 639 F.Supp.2d 836, 847 (W.D. Mich. 2009) (modifications in original)); *see also, e.g.*, *Newell v. Colvin*, No. 12-CV-480-S, 2014 WL 546761, at *6 (D.N.H. Feb. 10, 2014) (collecting cases); *Connor v. Colvin*, Civil No. 14-40163-TSH, 2016 WL 4358117, at *9 (D. Mass. Mar. 31, 2016). This applies to Stage Three determinations as well. *See, e.g.*, *Averill v. Astrue*, Civil No. 09-445-P-H, 2010 WL 2926267, at *6 (D. Me. July 16, 2010). "Plaintiff must do more than merely introduce evidence of [her] obesity; rather, [s]he must specifically show how obesity affects [her] abilities needed for gainful employment." *Durant-Irizarry*, 2015 WL 8514587 at *4. "In other words, '[i]t [is] not enough ... to argue that the evidence shows that [plaintiff] suffers from some of the usual effects of morbid obesity.'" *Id.* (quoting *Smith v. Astrue*, 639 F.Supp.2d at 847) (modifications in original). Detres argues that the record shows that she suffers from obesity

without crafting any argument that her obesity affects her ability to pursue and retain gainful employment; she merely suggests that in theory, obesity could exacerbate certain of her other symptoms without explaining how or showing that her obesity actually did have an effect. *See* Dkt. 15 at 17. Prior decisions make it clear that this is not enough for Detres to meet her burden of proof. Accordingly, Detres's claim that the ALJ overlooked Detres's obesity at Step Three and failed to properly consider her obesity at Step Four fails.

### B. Objected-To Exhibits

The ALJ made note of a prior ALJ decision (included as an exhibit that Detres had objected to) in her opinion when determining Detres's past employment. *See* Tr. 25, 37; Dkt. 15 at 18-20. However, the ALJ did not rely upon the prior opinion in determining the requirements of Detres's past employment, and as a result, I find it unnecessary to reach the issue of whether the ALJ could have properly relied upon the prior decision. First, during a hearing in the present case, Detres testified that she worked in the radiology area of a hospital dealing with "invoicing and in the x-ray file and records, and [she] helped patients," Tr. 40; even standing on its own, Detres's testimony provides substantial support for the notion that her prior employment was as a medical secretary involved in medical services, as the ALJ found. *See* Tr. 25. The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán*, 819 F.2d at 3.

Second, the ALJ made it clear that she relied upon her own analysis of the evidence and did not fully agree with the prior ALJ decision's classification of Detres's past employment by stating that the prior decision's classification was correct, "except that [Detres] performed [the job] at the light exertional level" and not at a sedentary level. *Id*. Since the ALJ declined to fully adopt

the prior classification, her allusion to the past ALJ decision was a mere reference and she did not "rely" on the prior decision as Detres argues. As a result, Detres's second claim fails.

Detres is undoubtedly experiencing difficult times, and she has my sympathy and best wishes. Nonetheless, she has raised no claim that casts doubt upon the ALJ's determination. As a result, I affirm the Commissioner's decision.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of September, 2021.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge